391 A.2d 79.

Eleanor Calcagno *v.* Peter Calcagno.

Eleanor Calcagno *v.* Peter Calcagno.

AUGUST 17, 1978.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

724

BEVILACQUA, C.J. These are two separate appeals, arising from a divorce action, which have been consolidated for the purposes of oral argument. In the first case the husband appeals from a judgment citing him in contempt for failure to make support payments mandated by the original decree of divorce. In the second case the wife appeals from a subsequent order permitting the husband to purge himself of contempt, by payment of some but not all the arrearages, and terminating support for a child who at the time had reached the age of 18 but was not yet 21.

On November 9, 1967, a final divorce decree was entered in the Family Court in Newport terminating the marriage of Peter and Eleanor Calcagno. Both parties were Rhode Island residents at the time of the filing of the divorce petition and at the time of the entry of the final decree. In the final decree, Eleanor was awarded custody of the parties' three minor children and Peter was ordered to pay the sum of $75 per week for support of said children.

On June 3, 1974, Eleanor filed a petition in the Family Court in Newport alleging that Peter was $6,400 in arrears relative to the support payments and requesting the court to adjudge him in contempt. Peter was personally served with a contempt citation at his residence in New Jersey by a sheriff of said state. The citation directed him to appear in Family Court on June 28, 1974 to show cause why he should not be cited for contempt.

Peter responded by letter, dated June 21, 1974 to the clerk of the Family Court, wherein he reserved his right to dispute the court's jurisdiction and denied that he was delinquent in his support payments since he had unilaterally reduced said payments by $25 per week per child as each child became emancipated. A copy of the letter was returned to Peter with a notation informing him that support could only be reduced pursuant to a court order and advising him to obtain legal assistance.

Peter failed to appear in Family Court on June 28, 1974,

and was thereupon adjudged in contempt for failure to make payments in the amount of $6,600. On July 19, 1974, an order directing him to appear and to purge himself before the issuance of a capias for his arrest was entered. Eleanor's attorney mailed a copy of this order to him by certified mail.

Peter took no further action until August 23, 1976, on which date he filed a petition to set aside the judgment entered on June 28, 1974[1] and requested a permanent injunction to preclude Eleanor from attaching his wages under 42 U.S.C.A. 659. A hearing was held on October 7, 1976 and, 3 weeks later on October 28, 1976, an order was entered denying his petition for failure to comply with G.L. 1956 (1969 Reenactment) §9-21-2, and decreeing that the Family Court had jurisdiction over the subject matter and the person at the time its order was entered on June 28, 1974. The foregoing facts comprise the basis of Peter's appeal.

On January 3, 1977, Eleanor filed an additional petition to cite Peter in contempt for arrearages stemming from the period subsequent to the original judgment entered June 28, 1974. She alleged arrearages in the sum of $6,200 from July 1974 through December 1976. Peter responded by filing a petition to amend the support provisions of the original divorce decree. The court treated petitions as motions and on June 16, 1977, granted Peter's motion to terminate the support payments on the grounds that all three children were either emancipated or had attained the age of majority. Additionally, the court adjudged Peter in contempt for failure to make support payments totaling $14,778 and directed him to purge himself by making support payments in the amount of $12,400 pursuant to a court formulated schedule. Eleanor filed a notice of appeal from this decree.

## A

We shall initially address the three issues raised in Peter's appeal: (1) whether the Family Court, after entry of a final

---

[1]The petition erroneously requests that the judgment of June 28, 1976 be voided.

decree, retains personal jurisdiction over a non-resident respondent; (2) whether support payments to children of parties terminate when a child becomes emancipated; and (3) whether the Family Court justice erred in denying respondent's petition to set aside the entry of judgment for failure to comply with §9-21-2.

I

The first issue focuses on the time period subsequent to the entry of the final decree. After the entry of the final decree, Peter left Rhode Island, remarried, and became a permanent resident of New Jersey. In the instant case, he argues that because he was a resident of a foreign jurisdiction at the time Eleanor filed her petition citing him in contempt, the Family Court lacked jurisdiction over him. He does not contest the validity of the final decree since he was a Rhode Island resident at the time it was entered.

Two essential elements of a valid judgment are that the court have jurisdiction of the subject matter and of the parties whose rights are to be adjudicated. *Lamarche v. Lamarche*, 115 R.I. 472, 474, 348 A.2d 22, 23 (1975). Additionally, a valid judgment cannot be entered against an individual unless he has received adequate notice and has been afforded an opportunity to be heard. *Id.* at 474, 348 A.2d at 23. In the case at bar Peter was personally served by a New Jersey sheriff and was ordered to appear in Family Court to show why he should not be adjudged in contempt for his failure to make support payments pursuant to the terms of his divorce decree. We believe that he was sufficiently apprised of the contempt proceeding and was afforded to opportunity to be heard.

As we have said many times, the Family Court is one of statutory creation possessing only those powers specifically conferred upon it by the Legislature. *Brandt v. Brandt*, 119 R.I. 607, 609, 381 A.2d 1047, 1048 (1978); *Tetreault v. Tetreault*, 119 R.I. 611, 613, 381 A.2d 1049, 1050 (1978); *Castellucci v. Castellucci*, 116 R.I. 101, 105, 352 A.2d 640, 643 (1976). The court's jurisdiction of the subject matter here

in question is outlined in §15-5-16. The pertinent part of this statute reads:

"The * * * [Family] [C]ourt may regulate the custody and provide for the education, maintenance, and support of children of all persons by it divorced * * * and the court may make all necessary orders and decrees concerning the same and the same *at any time* may alter, amend, and annul for sufficient cause, after notice to the parties interested therein." (Emphasis added.)

In this state the questions of custody and support of minor children of divorced parties, whether provided for in the final decree or otherwise, continue within the jurisdiction and control of the court, *Cambra* v. *Cambra,* 114 R.I. 553, 556, 336 A.2d 842, 844 (1975); *King* v. *King,* 114 R.I. 329, 330, 333 A.2d 135, 137 (1975); *Reynolds* v. *Reynolds,* 79 R.I. 163, 166, 85 A.2d 565, 567 (1952), notwithstanding the absence of the other spouse from this jurisdiction. *See* §15-5-16. Such matters are incidental to the divorce proceeding. *Hacking* v. *Hacking,* 78 R.I. 325, 327, 82 A.2d 168, 169 (1951). By filing her petition dated June 3, 1974, Eleanor sought to recover the delinquent support payments for her children. Clearly, she was not attacking the integrity of the final decree. Thus, it is our opinion that the Family Court retained jurisdiction over both the parties and the subject matter and properly adjudged Peter in contempt for his failure to make the overdue support payments.

## II

Having decided that the Family Court had jurisdiction over respondent, we next turn to his contention that the Family Court lacked the authority to award support payments to children who were either emancipated or had reached majority age.

The established rule is that a father's responsibility for the support of his children terminates once they reach the age of majority absent some exceptional circumstances or express

agreement between the parties to the contrary. *Bouchard v. Bouchard*, 119 R.I. 656, 662, 382 A.2d 810, 813 (1978); *Tuttle* v. *Tuttle*, 86 R.I. 421, 423, 135 A.2d 841, 842 (1975). However, a Family Court decree ordering child support is not self-terminating but is valid and effective until amended or terminated by an order of the court. *Bouchard* v. *Bouchard, supra; Ciallella* v. *Ciallella*, 81 R.I. 320, 325, 103 A.2d 77, 79 (1954). Since Peter unilaterally reduced the support payments by $25 per week as each child either became emancipated or attained the age of majority, his liability for the support of the three children was not terminated by proper order of the court. The Family Court justice, therefore, was correct in finding Peter in contempt for failure to make support payments for the benefit of the children.

### III

Peter also alleges that the Family Court justice erred in denying his petiton of August 23, 1976 to set aside the judgment of June 28, 1974 for failure to comply with §9-21-2. However, because he neither briefed nor argued this issue, his appeal from the decree below is deem waived. *Tente* v. *Tente*, 112 R.I. 636, 641, 314 A.2d 149, 152 (1974); *Petella* v. *Corp Brothers*, 107 R.I. 599, 614, 268 A.2d 699, 706 (1970).

### B

The two issues raised in Eleanor's appeal are as follows: (1) whether the Family Court justice erred in ordering payment of some but not all of the arrearages for unmet child support; and (2) whether the Family Court justice erred in terminating support for a child who had reached age 18 but was not yet 21 in light of the statutory lowering of the age of majority.

### I

Eleanor's first ground for appeal concerns the issue of whether the trial justice was incorrect when he ordered payment of some but not all of the arrearages for unmet child support. At the conclusion of the Family Court hearing on

Eleanor's second petition to have her husband adjudged in contempt for his failure to make support payments, and on Peter's petition to be relieved from making future payments because the children had attained the age of majority, the trial justice cited him in contempt for failure to make payments in the amount of $14,778[2] but permitted him to purge himself of contempt by paying $12,400.

It is well settled that:

> "[u]npaid allowances for alimony and support under a divorce decree are in the nature of a final judgment and cannot be retroactively disturbed, and the court's authority to modify a decree extends only to the executory portions thereof." *Tente* v. *Tente,* 112 R.I. 636, 640, 314 A.2d 149, 151 (1974); *Klimasewski* v. *Klimasewski,* 91 R.I. 308, 311, 162 A.2d 549, 551 (1960); *Ciallella* v. *Ciallella,* 81 R.I. 320, 325, 103 A.2d 77, 79 (1954).

Although the trial justice felt bound by this rule, he did not award the full extent of the arrearage. We believe that the rule is inflexible and may not be relaxed to accommodate the whims of the parties or anyone else. We hold, therefore, that the trial justice lacked the authority to retroactively modify the support sum fixed by the final decree.

## II

Eleanor's second contention is that the trial justice erred in granting Peter's petition to cease support payments for the couple's youngest child who was 19 years old at the time the order was entered.[3] Her argument is premised on the fact that §15-12-1, the statute lowering the age of majority from 21 to 18 years, became effective after the original divorce

---

[2]This amount included the $6,600 awarded under the previous decree entered on July 19, 1974, and reaffirmed in the order of October 28, 1976.

[3]The original decree was entered on November 9, 1967, and the statute became effective on March 29, 1972. The new order was entered on June 16, 1977, at which time the youngest child had reached 18.

decree providing support payments for the designated minor children was entered. She contends that the statute affects the substantive rights of the children and, therefore, it cannot be applied retroactively.

Although this issue has not been addressed in Rhode Island, it has been extensively considered in other jurisdictions. The courts which have refused to order support beyond the age of 18, after a statutory change in the age of majority, have generally based their decisions upon the premise that majority or minority is a status rather than a fixed or vested right. Annot., 75 A.L.R.3d 228, 238 (1977).

Some courts have adopted a contrary position. These courts have based their holdings upon pre-existing agreements between the parties relating to support, *Abb* v. *Crossfield*, 23 Md. App. 232, 237, 326 A.2d 234, 238 (1974), and upon decrees specifying support "until the age of 21." *Cunningham* v. *Cunningham*, 12 Wash. App. 778, 779, 532 P.2d 652, 654 (1975); *Choquette* v. *Choquette*, 232 Ga. 759, 760 208 S.E. 2d 848, 849 (1974).

Here Eleanor relies on the holding in *Vicino* v. *Vicino*, 30 Conn. Supp. 49, 298 A.2d 241 (1972). In that case, a Connecticut Superior Court justice held that support for minor children until they reach the age of 21 was a substantive right, accorded by the statute in effect at the time the decree was entered, and that it was not to be disturbed retroactively by the statute lowering the age of majority to 18. However, we believe her reliance on the *Vincino* case is misplaced and illfounded since it was expressly disapproved in *Sillman* v. *Sillman*, 168 Conn. 144, 152, 358 A.2d 150, 154 (1975), wherein the Connecticut Supreme Court ruled that minority is a status and not a vested right.

It is our opinion that minority is a status with no fixed, vested or accrued rights in future support. It is a status created by law and subject to change by legislative enactment. *Stanley* v. *Stanley*, 112 Ariz. 282, 541 P.2d 382 (1975); *Rice* v. *Rice*, 213 Kan. 800, 805, 518 P.2d 477, 481 (1974);

*Beaudry* v. *Beaudry*, 132 Vt. 53, 57, 312 A.2d 922, 925 (1973); *Schmitz* v. *Schmitz*, 70 Wis. 2d 882, 890, 236 N.W. 2d 657, 662 (1975). We conclude, therefore, that the trial justice was correct in terminating the support payments once the youngest child had attained the age of 18.

The respondent's appeal is denied and dismissed, and the decree appealed from is affirmed. The petitioner's appeal is affirmed in part and denied in part and the case is remanded to the Family Court for further proceedings consistent with this opinion.

*Ralph D. Morrison,* for petitioner.

*Macioci & Grimm, Joseph J. Macioci, E. Paul Grimm,* for respondent.